NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-5431

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

JAMES FARMER, et al.,
*Plaintiffs-Appellants*,

v.

ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Defendants-Appellees*,

and

NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES,
*Intervenor-Appellee*.

---

Appeal from the United States District Court for the District of Columbia
No. 1:24-cv-01654 (Hon. Dabney L. Friedrich)

---

**BRIEF FOR FEDERAL DEFENDANTS-APPELLEES**

---

Of Counsel:

SIMMA ASHER KUPCHAN
JESSICA H. ZOMER
*Attorney*
Environmental Protection Agency

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
SHARI HOWARD
BRIAN C. TOTH
*Attorneys*
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3112
brian.toth@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

All parties and intervenors appearing before the district court and in this Court are listed in the Brief for Appellants. No amici appeared in the district court. All amici appearing in this Court to date are listed in the Amicus Brief of Robert Bierschenk, et al., and the Amicus Brief of Plainfield Township, Pennsylvania, et al.

### B.    Rulings Under Review

This appeal is from a final order and memorandum opinion of the United States District Court for the District of Columbia (Honorable Dabney L. Friedrich) on September 29, 2025 in civil case number 24-1654, granting defendants' motion to dismiss all of the claims by plaintiffs in the case.

### C.    Related Cases

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).

/s/ *Brian C. Toth*
BRIAN C. TOTH

Counsel for Defendants-Appellees

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.................................................................................i

TABLE OF AUTHORITIES ...................................................... iv

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION............................................. 1

STATEMENT OF THE ISSUES ................................................ 1

PERTINENT STATUTES AND REGULATIONS ...................... 2

STATEMENT OF THE CASE.................................................... 2

     A.    Statutory and regulatory background ........................... 2

         1.    Clean Water Act permits and overview............................. 2

         2.    Sewage sludge regulation ..................................... 3

         3.    Citizen-suit enforcement ..................................... 6

     B.    Factual background ................................................... 7

     C.    Proceedings below ................................................... 9

SUMMARY OF ARGUMENT................................................... 11

STANDARD OF REVIEW ...................................................... 13

ARGUMENT ......................................................................... 14

I.    The Act does not impose a nondiscretionary duty on EPA to identify or regulate additional toxic pollutants in sewage sludge........................................................................ 14

II.     Plaintiffs' argument that EPA's biennial reports do not satisfy its duty to review the regulations is not properly before the Court. ................................................................................ 26

CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES*

## Cases

*Am. Forest Res. Council v. United States*,
 77 F.4th 787 (D.C. Cir. 2023) ............................................................ 28

*Am. Horse Protection Ass'n, Inc. v. Lyng*,
 812 F.2d 1 (D.C. Cir. 1987) ............................................................... 24

*Auer v. Robbins*,
 519 U.S. 452 (1997) .......................................................................... 24

*Bauer v. Fed. Deposit Ins. Corp.*,
 38 F.4th 1114 (D.C. Cir. 2022) .......................................................... 28

*Conservation Law Foundation, Inc. v. Pruitt*,
 881 F.3d 24 (1st Cir. 2018) ............................................................... 13

*District of Columbia v. Schramm*,
 631 F.2d 854 (D.C. Cir. 1980) ......................................................17, 23

*\*Environmental Defense Fund v. Thomas*,
 870 F.2d 892 (2d Cir. 1989) .........................................................16, 20

*Epic Sys. Corp. v. Lewis*,
 584 U.S. 497 (2018) .......................................................................... 21

*Groff v. DeJoy*,
 600 U.S. 447 (2023) .......................................................................... 20

*In re A Community Voice v. EPA*,
 878 F.3d 779 (9th Cir. 2017) ............................................................. 25

*Leather Indus. of Am., Inc. v. EPA*,
 40 F.3d 392 (D.C. Cir. 1994) ............................................................... 4

---

* Authorities upon which we chiefly rely are marked with asterisks.

*Martin v. United States*,
605 U.S. 395 (2025) .......................................................................... 22

*Miccosukee Tribe of Indians of Fla. v. EPA*,
105 F.3d 599 (11th Cir. 1997) ......................................................... 13

*National Wildlife Federation v. Browner*,
127 F.3d 1126 (D.C. Cir. 1997) ....................................................... 18

*Nichols v. United States*,
578 U.S. 104 (2016) .......................................................................... 20

*\*Norton v. Southern Utah Wilderness Alliance*,
542 U.S. 55 (2004) ................................................................. 14, 16, 17

*Oljato Chapter of Navajo Tribe v. Train*,
515 F.2d 654 (D.C. Cir. 1975) ......................................................... 17

*Public Citizen v. Nuclear Regulatory Comm'n*,
845 F.2d 1105 (D.C. Cir. 1988) ....................................................... 28

*\*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) .......................................... 13, 14, 17, 25

*Sierra Club v. Wheeler*,
956 F.3d 612 (D.C. Cir. 2020) ......................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ............................................................................ 27

*Tinius v. Choi*,
77 F.4th 691 (D.C. Cir. 2023) ......................................................... 27

*Tri-State Hosp. Supply Corp. v. United States*,
341 F.3d 571 (D.C. Cir. 2003) ......................................................... 13

*Trump v. Hawaii*,
585 U.S. 667 (2018) .......................................................................... 21

*U.S. Department of Energy v. Ohio,*
    503 U.S. 607 (1992) ........................................................ 13

*Vermont Yankee Nuclear Power Corp. v. NRDC,*
    435 U.S. 519 (1978) ........................................................ 26

*Waterkeeper Alliance v. EPA,*
    140 F.4th 1193 (9th Cir. 2025) ..................................... 25

**Statutes**

5 U.S.C. § 553(e) .................................................................. 24

5 U.S.C. § 555(b) ................................................................. 24

5 U.S.C. § 555(e) .................................................................. 24

5 U.S.C. § 706(1) ....................................................... 14, 17, 24

33 U.S.C. § 1251(a) ............................................................... 2

33 U.S.C. § 1251(b) ............................................................. 23

33 U.S.C. § 1272(b)(1) ........................................................ 18

33 U.S.C. § 1311 ................................................................... 3

33 U.S.C. § 1311(a) ............................................................... 2

33 U.S.C. § 1311(b)(1)(C) ..................................................... 3

33 U.S.C. § 1311(e) ............................................................... 3

33 U.S.C. § 1313(c)(2)(A) ...................................................... 3

33 U.S.C. § 1313(e)(2) ......................................................... 19

33 U.S.C. § 1314 ................................................................... 3

33 U.S.C. § 1314(a) ............................................................... 9

33 U.S.C. § 1314(a)(9)(B) ............................................................ 19

33 U.S.C. § 1342 ........................................................................... 2

33 U.S.C. § 1342(j) ...................................................................... 19

33 U.S.C. § 1345(a) ....................................................................... 3

33 U.S.C. § 1345(c) ....................................................................... 5

33 U.S.C. § 1345(d) (1982) .......................................................... 4

33 U.S.C. § 1345(d)(2)(A)(i) ...................................................4, 19

33 U.S.C. § 1345(d)(2)(A)(ii) ..................................................4, 19

33 U.S.C. § 1345(d)(2)(B)(i) ...................................................4, 19

33 U.S.C. § 1345(d)(2)(B)(ii) ..................................................4, 19

33 U.S.C. § 1345(d)(2)(C) .....................................................1, 5, 15

33 U.S.C. § 1362(6) ....................................................................... 2

33 U.S.C. § 1362(7) ....................................................................... 2

33 U.S.C. § 1362(11) ..................................................................... 3

33 U.S.C. § 1362(12) ..................................................................... 2

33 U.S.C. § 1362(14) ..................................................................... 2

33 U.S.C. § 1365(a) ....................................................................... 6

33 U.S.C. § 1365(a)(2) ............................................................6, 25

33 U.S.C. § 1369(b)(1) ................................................................ 25

33 U.S.C. § 1383(c) ....................................................................... 9

42 U.S.C. §§ 6942–6944 ............................................................... 5

42 U.S.C. § 6945(a) ............................................................ 5

42 U.S.C. § 6949a ............................................................. 6

42 U.S.C. § 7429 .............................................................. 6

Pub. L. No. 116-92, § 7361, 133 Stat. 1198 (2019) ......................... 6

Pub. L. No. 117-58, div. J, tit. VI, 135 Stat. 429 (2021) ................. 9

## Regulations

40 C.F.R. pt. 60, subpt. LLLL ............................................. 6

40 C.F.R. pt. 60, subpt. MMM .............................................. 6

40 C.F.R. pt. 62, subpt. LLL ............................................. 6

40 C.F.R. pt. 239–258 ..................................................... 6

40 C.F.R. pt. 503 .................................................... 4, 7, 9

40 C.F.R. pt. 503.9(w) .................................................... 7

40 C.F.R. § 122.44(d)(1) .................................................. 3

40 C.F.R. § 131.3(i) ...................................................... 3

40 C.F.R. § 131.6 ......................................................... 3

40 C.F.R. §§ 131.10-131.12 ................................................ 3

59 Fed. Reg. 9095 (Feb. 25, 1994) ..................................... 7, 24

58 Fed. Reg. 9248 (Feb. 19, 1993) ........................................ 4

60 Fed. Reg. 54,764 (Oct. 25, 1995) ...................................... 7

64 Fed. Reg. 42,552 (Aug. 4, 1999) ....................................... 7

64 Fed. Reg. 72,045 (Dec. 23, 1999) ...................................... 5

66 Fed. Reg. 66,228 (Dec. 21, 2001)...........................................................5

68 Fed. Reg. 61,084 (Oct. 24, 2003) .........................................................5

68 Fed. Reg. 75,531 (Dec. 31, 2003)..........................................................8

72 Fed. Reg. 14,233 (Mar. 26, 2007) .........................................................7

89 Fed. Reg. 105,041 (Dec. 26, 2024).........................................................9

90 Fed. Reg. 3859 (Jan. 15, 2025) ............................................................9

90 Fed. Reg. 16,128 (Apr. 17, 2025).........................................................9

## Other Authorities

132 Cong. Rec. S16427 (daily ed. Oct. 16, 1986) ...................................20, 21

H.R. Rep. No. 99-1004 (1986) .............................................................21, 22

H.R. 6668, 119th Cong. (2025) ................................................................9

S. 3457, 119th Cong. (2025).....................................................................9

S.B. 386, 164th Gen. Assemb., Reg. Sess. (Va. 2026)................................23

S.B. 719, 2026 Leg., 449th Sess. (Md. 2026) ..........................................23

*For purpose of*, Black's Law Dictionary (5th ed. 1979) ..................................16

*For purpose of*, Oxford English Dictionary (1978)........................................16

*Purpose*, Webster's New Universal Unabridged Dictionary
  (2d ed. 1983)..................................................................................16

*Purpose*, Webster's Third New International Dictionary (1986).....................16

## INTRODUCTION

The Clean Water Act required the Environmental Protection Agency ("EPA") to promulgate regulations of sewage sludge by a date certain, which the agency did, and to review them every two years "for the purpose of" identifying additional toxic pollutants and promulgating pertinent regulations. In the district court, Plaintiffs did not dispute that EPA conducts a biennial review. Rather, they sued to compel EPA to identify and regulate various per- and polyfluoroalkyl substances ("PFAS") in sewage sludge. The district court dismissed Plaintiffs' claims for failure to identify a nondiscretionary duty. It held that identifying and regulating pollutants is the discretionary "purpose of" the review, not a separate action that EPA must take, much less by a set deadline. That holding was correct, and the judgment should be affirmed.

## STATEMENT OF JURISDICTION

Defendants-Appellants agree with the Jurisdictional Statement in Plaintiffs-Appellants' Brief (p. 3), except that for the reasons below (pp. 14-26), the district court correctly held that it lacked subject-matter jurisdiction.

## STATEMENT OF THE ISSUES

Whether the district court correctly held that it lacked subject-matter jurisdiction over Plaintiffs' Clean Water Act citizen suit because 33 U.S.C.

§ 1345(d)(2)(C) does not contain a nondiscretionary duty to identify and regulate toxic pollutants in sewage sludge by a date certain.

## PERTINENT STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the Brief for Plaintiffs-Appellants.

## STATEMENT OF THE CASE

### A.  Statutory and regulatory background

### 1.  Clean Water Act permits and overview

The Clean Water Act establishes a comprehensive program designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the Act generally prohibits the "discharge of any pollutant," meaning "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. §§ 1311(a), 1362(12). The term "pollutant" encompasses a variety of materials, including "industrial, municipal, and agricultural waste." *Id.* § 1362(6). The term "navigable waters" means "the waters of the United States." *Id.* § 1362(7). And "point source" means "any discernible, confined and discrete conveyance," including "any … channel … , from which pollutants are or may be discharged." *Id.* § 1362(14).

Regulated entities generally comply with the Act by obeying the terms of a permit issued under section 402 of the Act, 33 U.S.C. § 1342. Such permits

contain "[e]ffluent limitations" that restrict the "quantities, rates, and concentrations of chemical, physical, biological, and other constituents" that may be discharged into navigable waters. *Id.* §§ 1311(e), 1362(11). Effluent limitations generally reflect the level of pollution control that can be achieved by point sources using various levels of technology. *Id.* §§ 1311, 1314. They can also be established to meet ambient-based conditions in the water body, as specified in the applicable water-quality standards. *Id.* § 1311(b)(1)(C); *see* 40 C.F.R. § 122.44(d)(1). Water-quality standards, typically developed by States and approved by EPA, comprise: (a) designated beneficial uses (*e.g.*, water supply, recreation, fish propagation); (b) water quality criteria, which generally define the amounts of pollutants a waterway may contain without impairing its designated use; and (c) anti-degradation requirements, which govern the lowering of water quality in high-quality waters in some circumstances. *See* 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. §§ 131.3(i), 131.6, 131.10–131.12.

### 2. Sewage sludge regulation

Except in accordance with a permit, section 405 of the Clean Water Act expressly prohibits the "disposal of sewage sludge" where it would "result in any pollutant from such sewage sludge entering the navigable waters." 33 U.S.C. § 1345(a). In 1977, an amendment to the Act directed EPA in general terms to

develop a regulatory program to ensure the safe use and disposal of sewage sludge. *See* 33 U.S.C. § 1345(d) (1982).

In 1987, Congress amended the Act again to require EPA to promulgate specific regulations for the use and disposal of sewage sludge containing toxic pollutants. "Not later than November 30, 1986," EPA had to identify those toxic pollutants which, "on the basis of available information on their toxicity, persistence, concentration, mobility, or potential for exposure, may be present in sewage sludge in concentrations which may adversely affect public health or the environment," and to "propose regulations" for managing sewage sludge containing those pollutants. *Id.* § 1345(d)(2)(A)(i). EPA had to promulgate those regulations "[n]ot later than August 31, 1987." *Id.* § 1345(d)(2)(A)(ii). EPA finalized this first phase of required regulations in 1993. *See* 58 Fed. Reg. 9248 (Feb. 19, 1993) (codified, as amended, at 40 C.F.R. pt. 503); *see also Leather Indus. of Am., Inc. v. EPA*, 40 F.3d 392, 409 (D.C. Cir. 1994) (reviewing regulations).

As part of a second phase, "[n]ot later than July 31, 1987," EPA had to identify toxic pollutants not already identified, present in sewage sludge, that may adversely affect health and the environment, and had to propose regulations, to be finalized "[n]ot later than June 15, 1988." 33 U.S.C. § 1345(d)(2)(B)(i), (ii).

At issue here, the Act contains a provision labeled "Review," which states:

> From time to time, but not less often than every 2 years, the Administrator shall review the regulations promulgated under this paragraph for the purpose of identifying additional toxic pollutants and promulgating regulations for such pollutants consistent with the requirements of this paragraph.

*Id.* § 1345(d)(2)(C). Under this provision, EPA made findings about whether to regulate other pollutants over the next decade. *See* 68 Fed. Reg. 61,084, 61,085 (Oct. 24, 2003) (recounting history in deciding not to regulate dioxins in land-applied sewage sludge). The agency last proposed identifying certain pollutants as toxic for regulation under section 405 in 1999. *See* 64 Fed. Reg. 72,045 (Dec. 23, 1999) (proposing dioxin regulations); *see also* 66 Fed. Reg. 66,228 (Dec. 21, 2001) (determining such regulations not warranted).

The Act allows States, upon EPA's approval, to administer the permitting program for sewage sludge disposal. 33 U.S.C. § 1345(c). EPA has authorized nine states (Arizona, Idaho, Michigan, Ohio, Oklahoma, South Dakota, Texas, Utah, and Wisconsin) to implement the program. *See* NPDES State Program Authority, https://www.epa.gov/npdes/npdes-state-program-authority. EPA implements the permitting program for sewage sludge disposal in other states.

Relatedly, the disposal of sewage sludge in municipal solid waste landfills is regulated under the Resource Conservation and Recovery Act. *See, e.g.,* 42 U.S.C. §§ 6942–6944 (concerning state plans, establishing federal criteria for disposal of solid waste); *id.* § 6945(a) (prohibiting "open dumping of solid

waste"); *id.* § 6949a (requirements for updating § 6944(a) criteria); *see also* 40 C.F.R. pt. 239–258. And incineration of sewage sludge is regulated under the Clean Air Act. 42 U.S.C. § 7429; *see, e.g.,* 40 C.F.R. pt. 60, subpt. LLLL (performance standards for new incinerators), *id.* pt. 60, subpt. MMM (emission guidelines for existing incinerators), *id.* pt. 62, subpt. LLL (federal plan requirements). Also, in 2019 Congress required EPA to publish guidance on the destruction and disposal of PFAS. National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 7361, 133 Stat. 1198, 2289 (2019). EPA first published interim guidance on that topic in 2024, which it recently updated. *See* U.S. EPA, Interim Guidance on the Destruction and Disposal of [PFAS] Substances and Materials Containing [PFAS] Substances, https://www.epa. gov/system/files/documents/2026-04/2026-interim-guidance-on-pfas-destruc tion-and-disposal.pdf (Apr. 20, 2026).

### 3.   Citizen-suit enforcement

Under the Act, a citizen may bring suit "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under [the Act] which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). "The district courts shall have jurisdiction … to order the Administrator to perform such act or duty, as the case may be." *Id.* § 1365(a).

**B.    Factual background**

After Congress amended the Act in 1987 to require EPA to regulate toxic pollutants in sewage sludge, EPA promulgated regulations required by section 1365(d), entitled "Standards for the Use or Disposal of Sewage Sludge." 40 C.F.R. pt. 503. Those regulations define sewage sludge as "solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in a treatment works." *Id.* § 503.9(w). The regulations include pollutant limits, management practices, and other requirements for sewage sludge that is applied to land, fired in a sewage-sludge incinerator, or placed on a surface-disposal site. EPA has amended the regulations several times to address topics like pollutant limits, monitoring methods, and best practices for reducing pathogens. *See* 72 Fed. Reg. 14,233 (Mar. 26, 2007) (approving new methods for monitoring microbial pollutants); 64 Fed. Reg. 42,552, 42,568 (Aug. 4, 1999) (concerning direction for land application, surface disposal, incineration); 60 Fed. Reg. 54,764, 54,769 (Oct. 25, 1995) (same regarding pollutant limits for chromium, selenium); 59 Fed. Reg. 9095, 9099 (Feb. 25, 1994) (concerning molybdenum limits and monitoring requirements for incinerator emissions).

Since promulgating the regulations, EPA has prepared nine biennial reports, beginning in the early 2000s. EPA published the latest report, Biennial Report No. 9, in December 2022, for the reporting period 2020 to 2021. U.S.

EPA, Office of Water, Doc. EPA-822R22007, https://www.epa.gov/system/ files/documents/2022-12/2020-2021-biennial-report.pdf ("2022 Report"). During the biennial review process, EPA collects and reviews data on pollutant occurrence in sewage sludge in the United States from publicly available, peer-reviewed literature published in the previous two years. *See* 2022 Report at 1-9 (summarizing approach). Pollutants can include chemicals, microorganisms, pathogens, viruses, and particulates such as microplastics. *See*, *e.g.*, *id.* at iv, 9-10, A-1 to A-11, B-1 to B-56.

EPA has also undertaken other actions over the years, outside publishing the biennial reports, to further its review responsibilities. *See*, *e.g.*, 68 Fed. Reg. 75,531 (Dec. 31, 2003) (responding to National Academy of Sciences' report reviewing the technical basis for land-applied biosolids); Sewage Sludge Surveys, https://www.epa.gov/biosolids/sewage-sludge-surveys (collecting nationwide data on contaminants); Richman, T., *et al.*, Curation of a list of chemicals in biosolids from EPA National Sewage Sludge Surveys & Biennial Review Reports, 9 *Scientific Data* 180 (2022), *avail. at* https://doi.org/10.1038/s41597-022-01267-9 (listing chemicals found in biosolids from reviews and surveys). In January 2025, EPA published and solicited public comment on a draft risk assessment for two different types of

PFAS in biosolids. 90 Fed. Reg. 3859 (Jan. 15, 2025). The comment period ended on August 14, 2025. 90 Fed. Reg. 16,128, 16,129 (Apr. 17, 2025).[2]

In 2026 and the preceding five fiscal years, Congress provided $1 billion to address "emerging contaminants," including PFAS, in wastewater through grants to States under the Clean Water State Revolving Fund. Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, div. J, tit. VI, 135 Stat. 429, 1401 (2021); *see* 33 U.S.C. § 1383(c) (listing eligible activities). And in the current Congress, members have introduced bills about PFAS in surface water. *See* H.R. 6668, 119th Cong. (2025) (concerning effluent limitations guidelines, standards, water quality criteria); S. 3457, 119th Cong. (2025) (same).[3]

## C.    Proceedings below

Plaintiffs are individual farmers and ranchers, a Texas county where they live, and non-governmental organizations from Maine and Washington, D.C., that advocate for organic farming and environmental conservation. In June 2024, Plaintiffs brought suit against EPA under the Clean Water Act's citizen-suit provision for failing to identify and regulate various per- and polyfluoroalkyl

---

[2] EPA uses the term "biosolids" to mean sewage sludge that has been treated to meet the requirements in 40 C.F.R. pt. 503 and is intended to be applied to land as a soil conditioner or fertilizer.

[3] In December 2024, EPA published draft recommended water quality criteria to protect human health from several types of PFAS. 89 Fed. Reg. 105,041 (Dec. 26, 2024); *see* 33 U.S.C. § 1314(a) (concerning recommended criteria).

substances that they allege are toxic pollutants in sewage sludge. Specifically, Plaintiffs named 18 types of PFAS they contend are present in sewage sludge that they allege EPA is required (but has failed) to identify in its biennial reports because those PFAS may affect public health and the environment. Doc. 12:5-6 (Second Amended Complaint). Plaintiffs also alleged 11 other PFAS they contend EPA must regulate because the agency has already identified them in its reports as present in sewage sludge in concentrations that may adversely affect public health and the environment. Doc. 12:6-7.[4]

The district court granted EPA's motion to dismiss. Doc. 35:5-7. Examining the text of section 1345(d)(2), the court observed that, although the provision requires EPA to review its regulations every two years "for the purpose" of identifying and regulating additional toxic pollutants, the provision "furnishes no clear deadline" by which EPA must take those latter actions after conducting its review. Doc. 35:6-7. For this reason, the district court dismissed Plaintiffs' claims for lack of subject-matter jurisdiction because they failed to satisfy the terms of the citizen-suit provision. Doc. 35:7.[5]

---

[4] Plaintiffs say that if they prevail on appeal, they will "focus solely" on six PFAS EPA must identify and regulate. Br. 20. But they do not say what those six are or how they have been injured from EPA's failure to identify and regulate them.

[5] Plaintiffs alleged other claims under the Administrative Procedure Act ("APA"), which the district court also dismissed because the biennial report lacks any legal consequences and thus is not "final agency action" reviewable

**SUMMARY OF ARGUMENT**

Plaintiffs cannot maintain their Clean Water Act citizen suit because the statutory language does not impose an unequivocal duty on EPA to identify or regulate additional pollutants in sewage sludge, much less by a date certain.

Nondiscretionary-duty suits, which are modeled after proceedings for writs of mandamus against agency officials, require a plaintiff to identify a clear-cut duty from the face of the statute that the agency has failed to fulfill. That stringent requirement for suit is fitting given the drastic remedy that citizen suits provide—they allow a court to compel an agency to act, under penalty of contempt, for example, by publishing regulations before a specified date. To unlock that type of mandamus-like relief, a statute must clearly impose the type of ministerial duty that enables a court to command relief without supervising or reviewing the agency's exercise of judgment.

The provision here does not meet those standards. It provides that the Administrator "shall review the regulations [on sewage sludge] *for the purpose of* identifying additional toxic pollutants and promulgating regulations for such pollutants." Plaintiffs' complaint alleges that EPA failed to identify and regulate various PFAS as pollutants in sewage sludge, and it asks the court to enter an

---

under the APA. Doc. 35:7-10. On appeal, Plaintiffs are "no longer pursuing" those claims. Br. 20.

order declaring EPA's failure and ordering the agency to identify the pollutants and promulgate the pertinent regulations. But the language of the statute reveals that identifying and regulating are "the purpose of" the review. They are not separate, discrete actions that the statute unequivocally requires EPA to perform, much less by a date certain. The language "for the purpose of" clarifies that what follows describes the general goals of the review, and it gives EPA discretion how to use the results of its biennial review for proposing any amendments to the regulations. Such discretionary language cannot give rise to a citizen suit to compel the performance of a nondiscretionary duty.

Nor does the statutory language impose a fixed deadline by which additional pollutants must be identified and regulated. And it does not mention PFAS or any other specific chemical that EPA must regulate. Plaintiffs and their amici emphasize the legislative and statutory history, as well as the purpose of the provision, to establish that Congress wanted EPA to regulate sewage sludge after a long history of failing to do so. Because the statutory text does not unequivocally impose a nondiscretionary duty to revise the regulations, neither the statutory purpose nor its history is determinative. In any event, the purpose and history reveal that Congress was most concerned about forcing EPA to issue regulations in the first instance, which it did decades ago in the face of express statutory deadlines. Concern about revising the regulations was secondary to the

12

goal of requiring them in the first instance, and that is reflected by the lack of unequivocal language or a date certain for revision.

Finally, Plaintiffs contend that the district court erred in "finding" that EPA's biennial reports on sewage sludge satisfied its statutory responsibilities. But Plaintiffs' complaint does not allege that EPA failed to undertake a "review," only that it failed to "identify and regulate" PFAS as pollutants. The district court correctly never reached the merits of Plaintiffs' claims because it lacked jurisdiction; nor is there any "finding" to be reviewed by this Court.

The district court's judgment of dismissal should be affirmed.

## STANDARD OF REVIEW

A district court's order dismissing an action for lack of subject-matter jurisdiction is reviewed de novo. *See Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020). "A clearly mandated, nondiscretionary duty imposed on the Administrator is a prerequisite for federal jurisdiction under the [Clean Water Act] citizen suit provision." *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997); *cf. Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987) (Clean Air Act). The Act's citizen-suit provision provides a limited waiver of sovereign immunity, and accordingly, it must be "construed strictly" in favor of EPA. *Conservation Law Foundation, Inc. v. Pruitt*, 881 F.3d 24, 28 (1st Cir. 2018) (quoting *U.S. Department of Energy v. Ohio*, 503 U.S. 607, 615 (1992)); *see also Tri-*

*State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) ("[S]overeign immunity is jurisdictional in nature.").

**ARGUMENT**

**I.     The Act does not impose a nondiscretionary duty on EPA to identify or regulate additional toxic pollutants in sewage sludge.**

Plaintiffs contend that the district court erred when interpreting section 1345(d)(2)(C) as not imposing a nondiscretionary duty on EPA because the provision's "plain language" requires the agency "every two years, to identify" pertinent toxic pollutants in sewage sludge "and regulate them." Br. 22 (boldface omitted). That contention is incorrect.

1.     To compel agency action, a citizen suit must point to a nondiscretionary duty that is "readily-ascertainable" and not "only … the product of a set of inferences based upon the overall statutory scheme." *Thomas,* 828 F.2d at 791. As with similar provisions, an enforceable duty must be a "clear-cut" obligation or a "specific, unequivocal command." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (discussing suits to "compel agency action" under 5 U.S.C. § 706(1) (citation omitted)). In considering nondiscretionary-duty claims, the "only required judicial role" is "to make a clear-cut factual determination of whether a violation did or did not occur." *Thomas*, 828 F.2d at 791. If the duty is ambiguous or equivocal on the face of the statute, courts cannot fulfill that limited role.

The provision at issue here does not meet the required standard. It states: "From time to time, but not less than every 2 years, the Administrator shall review the regulations promulgated under this paragraph *for the purpose of* identifying additional toxic pollutants and promulgating regulations for such pollutants consistent with the requirements of this paragraph." 33 U.S.C. § 1345(d)(2)(C) (emphasis added). The parties agree that the Act requires EPA to "review the regulations" every two years, and that EPA regularly produces reports summarizing information about toxic pollutants in biosolids as part of that review. But Plaintiffs are no longer pursuing their claims seeking APA review of the content or adequacy of those reports. Br. 20. Instead, they assert that EPA has a nondiscretionary duty to identify additional pollutants and promulgate regulations, and that because EPA has not met those duties for certain substances, the district court should compel EPA to do a rulemaking.

The statutory text does not support Plaintiffs' assertion. Had Congress wanted to impose a nondiscretionary duty on EPA to identify and regulate additional pollutants as part of the biennial review, it could have said that EPA shall review "and identify" those toxic pollutants "and promulgate" the pertinent regulations. Instead, Congress mandated only the review and then provided general guidance about the aims and objectives of the review by explaining that the review was "for the purpose" of those tasks. As the district

15

court correctly held, that language is insufficiently clear to support a nondiscretionary duty that allows the court to compel EPA to identify and regulate additional pollutants. *Cf. Environmental Defense Fund v. Thomas*, 870 F.2d 892, 898 (2d Cir. 1989) (rejecting argument that a statutory command followed by non-mandatory language allowed court to compel revised regulations).

The commonsense meaning of the phrase "for the purpose of" is hortatory and aspirational. The word "purpose" means "that which a person sets before himself as an object to be reached or accomplished." Webster's New Universal Unabridged Dictionary 1465 (2d ed. 1983). It denotes merely an "aim; intention; [or] design." *Id.*; *see also* Webster's Third New International Dictionary 1847 (1986) ("an object to be attained; an end or aim to be kept in view"); *For purpose of*, Black's Law Dictionary 588 (5th ed. 1979) ("With the intention of"); Oxford English Dictionary 1627 (1978) ("the result or effect intended or sought"). Here, the phrase "for the purpose of" answers the question *what* the objective and aim of the reviews are, not how or when that purpose must be achieved. Such statutory language that identifies "the object to be achieved, but" that "leaves [the agency] a great deal of discretion in deciding how to achieve it," cannot sustain a nondiscretionary-duty suit. *See Norton*, 542 U.S. at 66.

First, the Act does not allow the courts to review *how* EPA undertakes its biennial review with the aim of identifying pollutants and promulgating

16

regulations. Courts considering nondiscretionary-duty claims cannot review the manner in which an agency exercises its discretion: "We long ago rejected ... the convoluted notion that EPA is under a nondiscretionary duty—for purposes of [a citizen-suit provision]—not to abuse its discretion." *Thomas*, 828 F.2d at 792 (citing *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 662-63 (D.C. Cir. 1975)); *District of Columbia v. Schramm*, 631 F.2d 854, 859 n.10 (D.C. Cir. 1980) (citizen-suit provision "does not apply" to "actions [that] are discretionary"). In other words, whether and how EPA's biennial reviews achieve their "purpose" is not reviewable through a nondiscretionary-duty suit. *Cf. Norton*, 542 U.S. at 64 ("[5 U.S.C.] § 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, *without directing how it shall act*." (internal quotation marks omitted, emphasis added)).[6]

Nor does the Act unequivocally impose a timeframe on *when* EPA must use the information gathered during the review to fulfill its "purpose," identifying and regulating more pollutants. The district court believed that the phrase "for the purpose of" connotes some "prospective," or future, duty to take

---

[6] Courts may compel an agency to conclude certain matters under the APA's "unreasonable delay" provision. Otherwise, courts review only the resulting final agency action. But Plaintiffs voluntarily dismissed their unreasonable delay claims in the district court, Doc. 35:9-10, and they are not appealing the dismissal of their claims on the basis that EPA's biennial reviews are not "final agency action," Br. 20.

a "subsequent" action. Doc. 35:6 (emphasis omitted). Although Plaintiffs bicker with that observation, they concede that "[t]he words 'for the purpose of' *can* be future-oriented." Br. 29. Because the phrase admittedly at least sometimes requires a "future-oriented" action, the text's arguable susceptibility to two meanings demonstrates that is does not impose an unequivocal duty. *Cf. National Wildlife Federation v. Browner*, 127 F.3d 1126, 1130 (D.C. Cir. 1997) (rejecting mandatory-duty suit based on a regulation that was "capable of supporting either [party's] interpretation").

Plaintiffs say it would be surprising if someone visiting the grocery store weekly "for the purpose of selecting and purchasing food" returns empty-handed "for months on end." Br. 29. But you might also exercise daily for the purpose of living longer, and that object cannot be evaluated until you reach the expected end of a lifetime spent without exercising. In other words, the frequency of the underlying activity does not dictate when its "purpose" is accomplished. Other statutory provisions mentioned by amicus curiae Robert Biershenk, et al. (p. 23) prove this point. For example, removing and remediating contaminated sediment might take time to achieve the stated purpose of "environmental enhancement and water quality improvement." 33 U.S.C. § 1272(b)(1). Documents that must be available "for the purpose of reproduction" likely must first be processed before being copied and sent to the requestor. *Id.* § 1342(j).

And state planning reviewed for the purpose of ensuring that it is "at all times" consistent with the Act necessarily includes times in the future. *Id.* § 1313(e)(2).

Looking at other subparagraphs of section 1345(d)(2), it is evident that where Congress wanted EPA to act by a date certain, it said so unequivocally. "Not later than November 30, 1986," EPA was required to identify toxic pollutants based on information already available to it and propose pertinent regulations. 33 U.S.C. § 1345(d)(2)(A)(i). "Not later than August 31, 1987," those regulations were to be finalized. *Id.* § 1345(d)(2)(A)(ii). Toxic pollutants not identified through that process were nevertheless to be identified and proposed for regulation "[n]ot later than July 31, 1987," and those regulations finalized "[n]ot later than June 15, 1988." 33 U.S.C. § 1345(d)(2)(B)(i), (ii). Had Congress wanted revised regulations proposed and finalized under court-enforceable deadlines for decades afterward, it knew how to require as much.

As an example of language more like what Plaintiffs are seeking, the district court cited another provision in the Act stating that every five years, EPA "shall review and, as necessary, revise the water quality criteria" for pathogens in coastal recreation waters. Doc. 35:6 (citing 33 U.S.C. § 1314(a)(9)(B)). While helpful for thinking about alternative text that Congress could have chosen, the example illustrates the many ways Congress confers discretion: the command "shall review," followed by discretionary language like "as appropriate" or "as

necessary," would also preclude a suit to compel revised criteria. *See Environmental Defense Fund*, 870 F.2d at 898.

2.      Plaintiffs and their amici rely heavily on the legislative and statutory history, along with EPA's alleged delay in promulgating the original sewage-sludge regulations, to argue that an enforceable schedule for revisions is more consistent with the statutory purpose. Br. 26-28; Towns' Am. Br. 25-26; Bierschenk Am. Br. 17-22. "Yet even the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text." *Nichols v. United States*, 578 U.S. 104, 112 (2016) (internal quotation marks omitted). And while statutory history sometimes can be informative, "statutory interpretation must 'begi[n] with,' and ultimately heed, what a statute actually says." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (citation omitted). As already explained, the statute is clear and cannot be muddled by its purpose or history.

But even on its own terms, the legislative history Plaintiffs and their amici cite is not dispositive of the congressional purpose behind section 405(d). Plaintiffs cite floor remarks by Senator Stafford that at least every two years, EPA "*must promulgate regulations*" for additional pollutants it identifies in sewage sludge. 132 Cong. Rec. S16427 (daily ed. Oct. 16, 1986) (emphasis added). The Conference Report contains a similar reference to the "provision requiring periodic review and revision of sludge regulations." H.R. Rep. No. 99-1004, at

20

160 (1986). But that is not what the Act says. And "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). That is especially so for "floor statements by individual legislators," which "rank among the least illuminating forms of legislative history." *Trump v. Hawaii*, 585 U.S. 667, 692 (2018) (brackets, citation omitted).

In any event, Plaintiffs and their amici overstate the import of the legislative history. The Senator's remarks principally emphasize compelling EPA to promulgate regulations, which had not then occurred. When the Senator introduced his amendment, he identified two purposes: "First, it directs EPA to begin the long overdue task of *promulgating* sludge regulations," and second, an unrelated topic not relevant here. 132 Cong. Rec. S16427 (emphasis added). Although periodic review and revision would help "EPA's rules keep pace with developing technical knowledge and adequately protect health and the environment," the review requirement "does not, however, excuse EPA from the need to issue comprehensive regulations on the schedule set forth in [the legislation]." *Id.* Whether revisions were mandatory was therefore not central to what the Senator addressed, much less to the legislative purpose of forcing EPA to promulgate regulations in the first place.

Likewise, the Conference Report emphasized similar concerns: review and revision would "allow for future changes in the regulations," but that would

not excuse EPA from issuing comprehensive regulations for "twenty of the most common toxic sludge pollutants" by 1987. H.R. Rep. No. 99-1004, at 160. The legislative history supports the correct interpretation of the text: Congress was focused on getting EPA to promulgate regulations in the first instance, so it created a mandatory directive that EPA fulfilled long ago, whereas the reviews and revisions were not as central to Congress's goals, so Congress chose to require only the reviews. Even if updating the regulations was equally important, "[f]ew pieces of legislation pursue any single 'purpos[e] at all costs.'" *Martin v. United States*, 605 U.S. 395, 408 (2025). Nothing in the legislative or statutory history elevates the goal of updating the regulations above the statutory text's plain meaning.

Finally, Plaintiffs overstate the significance of the statutory history to the current text. They contend that an earlier, 1977 version of the provision requiring EPA to publish regulations within one year and "from time to time thereafter," was later amended in a way that "defined what 'from time to time' meant: 'not less often than every 2 years.'" Br. 27. Not so. Although Congress eliminated "from time to time" in the provision for promulgating the regulations, it left the phrase in the provision about how often "the Administrator shall review the regulations." The more pertinent point is that the

language about "every 2 years" is an adverbial phrase modifying "shall review," not a command like "shall revise," which does not appear in the provision.

3. Plaintiffs' remaining arguments lack merit. They devote significant parts of their brief to discussing perceived flaws in the pace of EPA's sewage-sludge regulation, the failure to update the regulations, and various inspector general reports about those topics. Br. 11-19. Similarly, Plaintiffs' amici spend much of their brief discussing PFAS's toxicity, the ubiquity of sewage sludge, and harms from the failure to regulate PFAS. Towns' Am. Br. 6-23; Bierschenk Am. Br. 10-15, 24-27. But to date, Congress has chosen to address PFAS in sewage sludge only by providing grants to the States, not by imposing any mandatory standards. *See supra* (p. 9).[7]

To the extent Plaintiffs and their amici want EPA to regulate PFAS in sewage sludge, they can petition the agency for a rulemaking, as the district court noted. Doc. 35:9. The APA requires agencies to allow interested persons to "petition for the issuance, amendment, or repeal of a rule," 5 U.S.C. § 553(e),

---

[7] Amici's complaints about whether and how States regulate PFAS are irrelevant. Since this appeal was filed, at least two States have passed legislation addressing the issue. S.B. 719, 2026 Leg., 449th Sess. (Md. 2026); S.B. 386, 164th Gen. Assemb., Reg. Sess. (Va. 2026). In any event, the variety of State approaches is an intended result of the Act's cooperative federalism. *See* 33 U.S.C. § 1251(b) ("protect[ing] the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution"); *accord Schramm*, 631 F.2d at 863 (noting "the strong current of federalism in the Clean Water Act").

and, when such petitions are denied, to give "a brief statement of the grounds for denial," *id*. § 555(e). Agency decisions denying rulemaking petitions based on a refusal to regulate are judicially reviewable. *See, e.g.*, *Am. Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4 (D.C. Cir. 1987); *Auer v. Robbins*, 519 U.S. 452, 459 (1997) ("The proper procedure for pursuit of respondents' grievance is set forth explicitly in the APA: a petition to the agency for rulemaking, § 553(e), denial of which must be justified by a statement of reasons, § 555(e), and can be appealed to the courts, §§ 702, 706."); *see also* 59 Fed. Reg. at 9096 (determining that EPA would reconsider molybdenum limits after receiving a petition).

Further, the APA directs agencies to conclude matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and states that the "reviewing court shall ... compel agency action … unreasonably delayed," *id.* § 706(1). Had Plaintiffs petitioned EPA for a rulemaking, they might have had recourse to claims under that provision if EPA delayed in responding to their request. Plaintiffs, however, nowhere alleged they petitioned the agency for a rulemaking, and they agreed to dismiss their unreasonable delay claim. Doc. 35:9-10 (citing Doc. 14:16).

As a last resort, Plaintiffs urge the Court to find nondiscretionary duties more readily in the context of updating standards to protect health and the environment. Br. 28. As support, they cite *In re A Community Voice v. EPA,* a

divided Ninth Circuit decision where the majority relied on congressional findings and purposes in the Toxic Substances Control Act to rule that Congress required EPA to revise rules promulgated under that statute. 878 F.3d 779, 784 (2017). That case was wrongly decided for the reasons explained by the dissent. *See id.* at 788-93 (N.R. Smith, J., dissenting). In any event, Plaintiffs have not pointed to any similar amalgam of findings and purposes in the Clean Water Act's text from which a nondiscretionary duty arises. *Cf. Thomas*, 828 F.2d at 792 (suggesting "there may be isolated occasions" where an "inferrable deadline imposes a mandatory duty of timeliness," but noting they "will be very rare").

Finally, the Ninth Circuit's decision in *Waterkeeper Alliance v. EPA*, 140 F.4th 1193 (2025), cited in an amicus brief by Pennsylvania and New York towns (pp. 26-27), is inapposite. That case was a petition for review filed in the court of appeals, not a citizen suit to enforce a nondiscretionary duty. *See* 140 F.4th at 1209 (discussing jurisdiction under 33 U.S.C. § 1369(b)(1)). The case, therefore, did not concern the question at issue here—whether EPA failed to perform "any act or duty under [the Clean Water Act] which is not discretionary with [EPA]." 33 U.S.C. § 1365(a)(2); *see Waterkeeper Alliance*, 140 F.4th at 1209-10 (stating that § 1365(a)(2) "is only indirectly relevant" and "[t]his is not a challenge to any nondiscretionary duty EPA has"). The Towns further suggest (pp. 27-28 n.62) that EPA must make a "judicially reviewable determination"

25

whether to revise its rules. But the Act does not require such a finding, and it would be inappropriate for a court to demand it here. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 525 (1978) (reversing two of this Court's cases for "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress").

## II. Plaintiffs' argument that EPA's biennial reports do not satisfy its duty to review the regulations is not properly before the Court.

Plaintiffs argue that the district court "found" that EPA's biennial reports "meet its statutory obligations" under the Act's review provision, and they challenge that purported "finding" as incorrect. Br. 31-32. This argument is not properly before the Court for at least two reasons. First, although Plaintiffs now argue that the reports "do not fulfill EPA's biennial review duty," Br. 31 (boldface omitted), they never pleaded or pressed a failure-to-review claim in the district court. Instead, they alleged, as they do in the rest of their brief on appeal, that EPA breached a "duty to identify and regulate" PFAS in sewage sludge. Br. 2; *see also* Br. 20 (promising on remand to focus on six PFAS "requiring identification and regulation"). Indeed, Plaintiffs' operative complaint labels their Clean Water Act causes of action as "Failure to Identify" and "Failure to Regulate" the various pollutants. Doc. 12:22, 25 (boldface omitted). Their request for relief reflects a similar framing of their claims. Doc. 12:31 (seeking declaration, mandatory order "to identify … and regulate" listed PFAS). This

Court should decline to determine whether EPA satisfied a duty to review the regulations for that reason alone. *See, e.g.*, *Tinius v. Choi*, 77 F.4th 691, 706 (D.C. Cir. 2023) (holding a claim "forfeited" that "Plaintiffs neither pleaded nor pressed … in the district court").

Second, the district court never "found" that the biennial reports satisfy EPA's review responsibilities, as Plaintiffs contend. Instead, the court dismissed Plaintiffs' Clean Water Act citizen-suit claims for lack of jurisdiction based on the failure to plead a violation of a nondiscretionary duty. Doc. 35:7. When a court lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Having held that it lacked subject-matter jurisdiction over those claims, the district court could not, and never actually did, make any "finding" on the merits of Plaintiffs' claims.

Plaintiffs seize upon language in the district court's decision that they characterize as a "finding" that the reports satisfied the review duty. Br. 31-32. But that characterization is incorrect. The sentence says: "*the statute requires* that EPA review its existing regulations to facilitate the subsequent identification and regulation of pollutants." Doc. 35:6 (emphasis changed). The district court did not reach the merits of a claim over which it lacked jurisdiction.

Moreover, to the extent Plaintiffs now are arguing that the biennial report is legally inadequate, Plaintiffs seem to be challenging the adequacy of the reports and the legal sufficiency of EPA's review of its regulations, not a failure to engage in any review whatsoever. But the district court dismissed Plaintiffs' APA challenges to the reports for lack of final agency action, and Plaintiffs have declined to raise those issues on appeal. "Almost any objection to an agency action can be dressed up as an agency's failure to act." *Public Citizen v. Nuclear Regulatory Comm'n*, 845 F.2d 1105, 1108 (D.C. Cir. 1988). Plaintiffs cannot bypass normal appellate procedures by attempting to repackage their final agency action challenges. *Cf. Am. Forest Res. Council v. United States*, 77 F.4th 787, 805 (D.C. Cir. 2023) (rejecting failure-to-act claim that would not be viable if brought as a challenge to "agency action").

If this Court rules that the district court had jurisdiction over Plaintiffs' claims, it should remand to the district court rather than rule on whether EPA failed to meet its statutory duty. The parties did not litigate the merits of that issue, and this Court is "[one] of review, not of first view, so where the merits went unaddressed below, it is [the Court's] general practice … to remand to the district court." *Bauer v. Fed. Deposit Ins. Corp.*, 38 F.4th 1114, 1126 (D.C. Cir. 2022) (internal quotation marks, citations, brackets omitted). Moreover, EPA did not produce for the district court a record of all relevant documents

establishing that it discharged the biennial review duty. EPA should be allowed to make that showing before any court holds to the contrary.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

/s/ *Brian C. Toth*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

Of Counsel:

SIMMA ASHER KUPCHAN
JESSICA H. ZOMER
*Attorney*
Environmental Protection Agency

May 2026
90-5-1-4-22643

SHARI HOWARD
BRIAN C. TOTH
*Attorneys*
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3112
brian.toth@usdoj.gov

*Counsel for Defendants-Appellees*
*Environmental Protection Agency, et al.*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 6,491 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Calisto MT font.

/s/ *Brian C. Toth*
BRIAN C. TOTH

*Counsel for Defendants-Appellees*
*Environmental Protection Agency, et al.*